UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KOSTMAYER CONSTRUCTION, LLC | CIVIL ACTION |
| VERSUS | NO. 24-408 |
| ZURICH AMERICAN INSURANCE COMPANY, *et al.* | SECTION M (5) |

## ORDER & REASONS

Before the Court is a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendant Arthur J. Gallagher Risk Management Services, LLC ("AJG").[1] Plaintiffs Monticello Equipment Corporation ("Monticello") and Kostmayer Construction, LLC ("Kostmayer") (together, "Plaintiffs") respond in opposition,[2] and AJG replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion but affording Plaintiffs one last opportunity to cure their pleading deficiencies.

## I. BACKGROUND

This case concerns a maritime allision and the resulting insurance claims. At the relevant time, Monticello owned a crane barge known as the OU701, along with its machinery, equipment, and appurtenances, which included a Lima 175-ton lattice boom crawler crane.[4] Kostmayer, the bareboat charterer, owner *pro hac vice*, and operator of the OU701, used the barge in connection with its marine construction business.[5]

---

[1] R. Doc. 78.
[2] R. Doc. 80.
[3] R. Doc. 81.
[4] R. Doc. 71 at 4. The following facts are taken from the fourth amended complaint, the allegations of which are taken as true at this motion-to-dismiss stage.
[5] *Id.*

In March 2023, AJG acted as Plaintiffs' insurance agent, providing services that included communicating with insurers and submitting proposals on Plaintiffs' behalf.[6] Plaintiffs allege that AJG placed coverage with defendants Zurich American Insurance Company, Ascot Insurance Company, Endurance American Insurance Company, and Navigators Insurance Company (collectively, the "Insurance Defendants"), that included exclusions Plaintiffs did not anticipate.[7] Plaintiffs also allege that AJG failed to provide timely to Plaintiffs a copy of the insurance policy.[8] At the time the insurance was bound, Kostmayer was using the OU701 in an ongoing project.[9]

On September 21, 2023, Kostmayer's field personnel inspected the OU701 and found it to be spudded down, afloat, and on an even keel, adjacent to Rain Carbon's dock facility near Gramercy, Louisiana, located on the left descending bank of the Mississippi River.[10] Then, on September 22, 2023, the tug M/V *Louisiana Transporter* ("*Louisiana Transporter*") approached Rain Carbon's dock near the OU701, picked up a barge, and departed the facility.[11] Plaintiffs allege that, during this maneuver, the tug's stern and propeller or wheel-wash was directed at, and too close to, the OU701, which caused damage to the OU701's hull.[12] The OU701 began listing and then partially sank, which caused the Lima crawler crane to slide from the deck and damage the crane and Rain Carbon's adjacent dock facility.[13] Thereafter, Plaintiffs raised the OU701, the Lima crane, and the damaged portion of Rain Carbon's dock facility.[14] They also commenced repairs to Rain Carbon's dock facility and notified the Insurance Defendants of the casualty.[15]

---

[6] *Id.* at 5.
[7] *Id.* at 3, 5.
[8] *Id.* at 5.
[9] *Id.*
[10] *Id.* at 6.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 7.
[15] *Id.*

On February 16, 2024, Kostmayer filed this action against the Insurance Defendants alleging that they failed to tender payment for the loss although Kostmayer provided a timely proof of loss and the Insurance Defendants had ample time to investigate, adjust, and pay the claim.[16] On February 27, 2024, Kostmayer filed its first amended complaint adding the *Louisiana Transporter* and its owner and operator, American River Transportation Co., LLC, as defendants and alleging that they are liable for the allision.[17] The second amended complaint, filed on March 1, 2024, added Monticello as a plaintiff.[18]

Then, on September 16, 2024, Plaintiffs filed a third amended complaint adding AJG as a defendant and alleging that AJG "breached its obligations and duties to Plaintiffs by allowing the inclusion or provisions in the Insurance Defendants' policies, without notice to Plaintiffs, which provisions are now being used by the Defendants in defense of Plaintiffs' claims, and causing loss and damages to Plaintiffs."[19] As factual support for the claim, Plaintiffs alleged:

12.

In March 2023, [AJG] was Kostmayer and Monticello's agent for the procurement of the insurance coverages made subject of this litigation. [AJG]'s services included communication with insurers and the submission of proposals on Plaintiffs' behalf.

13.

[AJG] obtained the insurance coverages made subject of this litigation on Plaintiffs' behalf, which policies set forth provisions not contained in Plaintiffs' prior policies; not contained in the coverage proposal; not contained in the binder; but which provisions are now being used by the Defendants in defense to Plaintiffs' claims herein.[20]

---

[16] R. Doc. 2.
[17] R. Doc. 6.
[18] R. Doc. 8.
[19] R. Doc. 53 at 8.
[20] *Id.* at 5.

AJG represents that, prior to filing responsive pleadings, it informed Plaintiffs that it intended to file a Rule 12(b)(6) motion for failure to state a claim and provided supporting caselaw.[21] As a result, Plaintiffs filed the fourth amended complaint.[22]

In the fourth amended complaint, Plaintiffs allege that AJG "breached its obligations and duties to Plaintiffs by errors and omissions by allowing, without notice to Plaintiffs, the inclusion of provisions and exclusions in the Insurance Defendants' policies[, which] provisions and exclusions are now being argued in defense to Plaintiff[s'] claims."[23] This time, as factual support for the claim, Plaintiffs allege:

12.

In March of 2023, [AJG] was Kostmayer and Monticello's agent for the procurement of the insurance coverages made subject of this litigation. [AJG]'s services included communication with insurers and the submission of proposals on Plaintiffs' behalf.

13.

In March of 2023, [AJG] obtained the insurance coverages on Plaintiffs' behalf made subject of this litigation and presented the coverages to Plaintiffs. The coverages presented by [AJG] to Plaintiffs were understood by Plaintiffs to be the same coverages as their previous policy.

14.

On April 1, 2023, Plaintiffs' insurance policy became effective with provisions and exclusions not contained in Plaintiffs' prior policies; not contained in the coverage proposal; and not contained in the binder given to Plaintiffs on March 27, 2023. These provisions and exclusions are now being argued in defense to Plaintiff[s'] claims.

---

[21] R. Doc. 78-1 at 2.
[22] R. Doc. 71.
[23] *Id.* at 8.

15.

[AJG] never provided a copy of Plaintiffs' final policy until Plaintiffs requested the policy several days after the incident in September of 2023, over six[] months after the policy had been in effect.[24]

## II. PENDING MOTION

AJG moves to dismiss Plaintiffs' fourth amended complaint pursuant to Rule 12(b)(6), arguing that Plaintiffs fail to state a claim upon which relief can be granted because they "have not [identified] and cannot identify any duty owed but breached by AJG that would give rise to a claim."[25] AJG recites the elements required by Louisiana law to state a claim against an insurance agent and posits that Plaintiffs cannot state such a claim because they have not alleged that they requested that AJG procure a specific type of insurance or that AJG failed to obtain that requested insurance.[26] Instead, Plaintiffs allege that AJG allowed the inclusion of provisions and exclusions that the Insurance Defendants are using to deny coverage and that it did not timely provide a copy of the policy to Plaintiffs, neither of which, says AJG, states a claim.[27] As to the delivery of the policy, AJG contends that Louisiana law does not impose a duty upon an insurance agent or broker to deliver to the insured a copy of a marine insurance policy.[28]

In opposition, Plaintiffs argue that they have stated a claim against AJG because they contend that AJG failed to "obtain the same insurance coverage, under the same terms as plaintiffs' prior insurance coverage, which is what [P]laintffs engaged [AJG] to do."[29] Plaintiffs also contend that AJG failed to inform them that different insurance terms were procured when it neglected to provide a copy of the policy to them for more than six months, and then, only after the sinking of

---

[24] *Id.* at 5.
[25] R. Doc. 78-1 at 4.
[26] *Id.* at 4-5.
[27] *Id.* at 5.
[28] *Id.* at 6.
[29] R. Doc. 80 at 5, 7 (quotation at 5).

5

the OU701.[30] Stated differently, Plaintiffs maintain that their claims against AJG "are based on [their] expectation and understanding that [AJG] was to obtain the same terms of insurance coverage that [were] previously provided to [P]laintiffs without the additional provisions and exclusions that are now being advanced by the Insurance Defendants," and that this occurred without notice to Plaintiffs.[31] As to AJG's alleged failure to provide a copy of the policy to Plaintiffs in a timely manner, Plaintiffs argue that AJG had a duty under general agency principles of Louisiana law to deliver the policy in a reasonable time.[32]

AJG replies, reurging its argument that Plaintiffs did not allege that they requested a specific type of insurance and that AJG did not use reasonable diligence to obtain said insurance.[33] AJG points out that Plaintiffs never use the word "requested" in their fourth amended complaint, but instead allege that they "understood" AJG would procure the same coverage they had before.[34] As to nondelivery of the policy, AJG asserts that Plaintiffs concede that Louisiana law imposes no duty to deliver a marine insurance contract, such as the one at issue, and Plaintiffs cite no caselaw to support their position that general agency principles impose such a duty.[35]

### III. LAW & ANALYSIS

#### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[30] *Id.*
[31] *Id.* at 8 (emphasis omitted).
[32] *Id.* at 11-12.
[33] R. Doc. 81 at 1-5.
[34] *Id.* at 2-3.
[35] *Id.* at 5-6.

6

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations],

are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

B. Analysis

In *Isidore Newman School v. J. Everett Eaves, Inc.*, the Louisiana supreme court recognized that, "[i]n Louisiana, an insurance agent 'owes a duty of "reasonable diligence" to his

8

customer,' which is 'fulfilled when the agent procures the insurance requested.'" *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894, 899 (5th Cir. 2022) (quoting *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 42 So. 3d 352, 356 (La. 2010)). "To recover under Louisiana law for an agent's failure to obtain insurance coverage, a plaintiff must show '(1) an undertaking or agreement by the insurance agency to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was properly insured.'" *Id*. (quoting *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990)). Thus, an insurance agent fulfills his duty of reasonable diligence to his customer when he procures the insurance requested. *Id.* (citing *Isidore Newman*, 42 So. 3d at 356). However, the agent's duty "'has not been expanded to include the obligation to advise whether the client has procured the correct amount or type of insurance coverage.'" *Id.* (citing *Isidore Newman*, 42 So. 3d at 359). "To the contrary, 'it is the *insured's* responsibility to request the type of insurance coverage … needed,' and 'it is not the agent's obligation to spontaneously or affirmatively identify the scope or amount of insurance coverage the client needs.'" *Id.* (quoting *Isidore Newman*, 42 So. 3d at 359) (emphasis in original; alteration omitted).

The Fifth Circuit's pre-*Isidore Newman* decision in *Offshore Production Contractors, Inc. v. Republic Underwriters Insurance Co.* initiated a narrow line of cases holding that an insurance agent's fiduciary duty to the insured may be heightened under circumstances giving rise to a special relationship between the agent and the insured. 910 F.2d at 230. The case involved an insurance agent with 30 years' experience who specialized in insurance for oil-service companies. The insured, a maritime construction company hired by an oil company to construct a pipeline in

9

the Gulf of Mexico, had expressed concern to the agent about losses it could incur from downtime caused by bad weather. An insurance policy was specially drawn for the insured but the drafters rejected language that would have extended coverage to include downtime caused by bad weather. The agent told the insured that the policy covered losses due to downtime for any reason. The construction project was beset by weather delays, the insured made a claim for its losses, and the insurer denied the claim because weather delays were not covered under the policy. The insured sued the agent for breach of fiduciary duty. In upholding judgment against the agent, the Fifth Circuit observed that under the scenario presented – that is, "[w]here an agent is familiar with the insured's business, has reason to know the risks against which an insured wants protection, and has experience with the types of coverage available in a particular market" – an insurance agent acts as more than a "mere order taker" for the insured, and the agent's expanded "fiduciary duties include advising the client with regard to recommended coverage, investigating and ascertaining the financial condition of prospective companies, and notifying the insured of policy cancellations or terminations." *Id.* Now, though, in the wake of *Isidore Newman*, which represents the pronouncement of the state's highest court on a matter of state law, courts have rightly counseled that "the holding of *Offshore Production* should be closely cabined by the facts of the case." *Lightfoot v. Hartford Fire Ins. Co.*, 2010 WL 11545223, at *4 n.4 (E.D. La. Aug. 27, 2010).

Indeed, in *Coleman E. Adler & Sons*, the Fifth Circuit explained that *Offshore Production* "does not stand for the broad and murky proposition that a client's 'close relationship' with an insurance agent or broker creates a 'heightened duty' to anticipate the client's insurance needs or to recommend specific coverage." 49 F.4th at 900. Instead, the facts of *Offshore Production* "are far narrower" in that the insured there "told its insurance agent about its specific coverage needs, but the agent procured a policy that excluded the exact coverage [the insured] wanted. In other

10

words, the agent breached its fiduciary duty by negligently failing to obtain the coverage requested by its client." *Id.*

Here, Plaintiffs do not allege that they *requested* that AJG obtain a specific type of insurance, or even a policy without specific exclusions. Instead, what they allege is that they "understood" that AJG would obtain a policy with the same coverages as their prior one. This alleged understanding does not equate to a *request* for a specific amount or type of coverage, which is what Louisiana law requires to impose liability on an insurance agent or broker for a failure to procure such insurance. *See id.* at 899 (upholding dismissal of plaintiff's claim against its insurance agent when it failed to allege that it "specifically inquired" about certain coverage). Without an allegation that Plaintiffs made a specific request of AJG for insurance that it failed to use reasonable diligence to procure, Plaintiffs have not stated a breach-of-fiduciary-duty claim against AJG.

Nor have Plaintiffs stated a claim against AJG for any alleged failure to deliver timely a copy of the insurance policy. Louisiana Revised Statute 22:873 provides that an insurer must deliver the policy to the insured within a reasonable time of its issuance. Not so in this case. First, this statute applies to *insurers*, not agents or brokers like AJG. Second, even if § 873 applied to agents and brokers, Louisiana Revised Statute 22:851(A) states that the provisions of chapter 4 of the Louisiana Insurance Code, where § 873 is found, do not apply to ocean marine insurance. The parties do not dispute that the policy at issue here is one for marine insurance. Plaintiffs attempt to avoid this problem, though, by arguing that insurance agents and brokers have a duty under general agency principles to provide a copy of the policy to the insured because a "mandatary is bound to deliver to the principal everything he received by virtue of the mandate," relying upon

Louisiana Civil Code article 3004.[36] But Plaintiffs do not cite any caselaw applying article 3004 in this way to an insurance agent or broker, and the Court has not unearthed any. Moreover, Plaintiffs' argument flies in the face of the "well-settled rule of statutory construction that the more specific statute … controls over the more general provision." *Self v. BPX Operating Co.*, 388 So. 3d 366, 369 (La. 2024).

* * *

In sum, Plaintiffs have failed to state a viable claim against AJG, and AJG's motion must be granted.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that AJG's Rule 12(b)(6) motion to dismiss (R. Doc. 78) is GRANTED, and Plaintiffs' claims against it are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs have fifteen (15) days from the date of this Order & Reasons to file an amended complaint in one last effort to cure the pleading deficiencies noted herein, if they have a basis in fact to plead such allegations. However, Plaintiffs are cautioned that in presenting any such amended complaint they must comply with their obligations under Rule 11 of the Federal Rules of Civil Procedure.

New Orleans, Louisiana, this 26th day of March, 2025.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[36] R. Doc. 80 at 11-12.