UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KOSTMAYER CONSTRUCTION, LLC                    CIVIL ACTION

VERSUS                                         NO. 24-408

ZURICH AMERICAN                                SECTION M (5)
INSURANCE COMPANY, *et al.*

## ORDER & REASONS

Before the Court is a motion to dismiss the fifth supplemental and amending complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendant Arthur J. Gallagher Risk Management Services, LLC ("AJG").[1]  Plaintiffs Monticello Equipment Corporation ("Monticello") and Kostmayer Construction, LLC ("Kostmayer") (together, "Plaintiffs") respond in opposition,[2] and AJG replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons, granting the motion as to Plaintiffs' claim regarding delivery of the policy, but otherwise denying the motion.

## I.    BACKGROUND

This case concerns a maritime allision and the resulting insurance claims.  At the relevant time, Monticello owned a crane barge known as the OU701, along with its machinery, equipment, and appurtenances, which included a Lima 175-ton lattice boom crawler crane.[4]  Kostmayer, the bareboat charterer, owner *pro hac vice*, and operator of the OU701, used the barge in connection

---

[1] R. Doc. 88 (citing R. Doc. 87).
[2] R. Doc. 90.
[3] R. Doc. 92.
[4] R. Doc. 87 at 4.  The following facts are taken from the fifth amended complaint, the allegations of which are taken as true at this motion-to-dismiss stage.

with its marine construction business.[5]  On September 21, 2023, Kostmayer's field personnel inspected the OU701 and found it to be spudded down, afloat, and on an even keel, adjacent to Rain Carbon's dock facility near Gramercy, Louisiana, located on the left descending bank of the Mississippi River.[6]  Then, on September 22, 2023, the tug M/V *Louisiana Transporter* ("*Louisiana Transporter*") approached Rain Carbon's dock near the OU701, picked up a barge, and departed the facility.[7]  Plaintiffs allege that, during this maneuver, the tug's stern and propeller or wheel-wash was directed at, and too close to, the OU701, which caused damage to the OU701's hull.[8]  The OU701 began listing and then partially sank, which caused the Lima crawler crane to slide from the deck and damage the crane and Rain Carbon's adjacent dock facility.[9]  Thereafter, Plaintiffs raised the OU701, the Lima crane, and the damaged portion of Rain Carbon's dock facility.[10]  They also commenced repairs to Rain Carbon's dock facility and notified the insurers of the casualty.[11]

After the accident, Plaintiffs made claims with these insurers, defendants Zurich American Insurance Company, Ascot Insurance Company, Endurance American Insurance Company, and Navigators Insurance Company (collectively, the "Insurance Defendants"), under their hull and machinery and protection and indemnity policies.[12]  But the Insurance Defendants have refused to pay Plaintiffs' claim.[13]

On February 16, 2024, Kostmayer filed this action against the Insurance Defendants, alleging that they failed to tender payment for the loss, although Kostmayer provided a timely

---

[5] *Id.*
[6] *Id.* at 10.
[7] *Id.* at 11.
[8] *Id.*
[9] *Id.*
[10] *Id.* at 12.
[11] *Id.* at 11-12.
[12] *Id.* at 3, 12.
[13] *Id.* at 12.

proof of loss and the Insurance Defendants had ample time to investigate, adjust, and pay the claim.[14]  On February 27, 2024, Kostmayer filed its first amended complaint adding the *Louisiana Transporter* and its owner and operator, American River Transportation Co., LLC, as defendants and alleging that they are liable for the allision.[15]  The second amended complaint, filed on March 1, 2024, added Monticello as a plaintiff.[16]

Then, on September 16, 2024, Plaintiffs filed a third amended complaint adding AJG as a defendant and alleging that AJG "breached its obligations and duties to Plaintiffs by allowing the inclusion or provisions in the Insurance Defendants' policies, without notice to Plaintiffs, which provisions are now being used by the [Insurance] Defendants in defense of Plaintiffs' claims, and causing loss and damages to Plaintiffs."[17]  As factual support for the claim, Plaintiffs alleged:

12.

In March 2023, [AJG] was Kostmayer and Monticello's agent for the procurement of the insurance coverages made subject of this litigation.  [AJG]'s services included communication with insurers and the submission of proposals on Plaintiffs' behalf.

13.

[AJG] obtained the insurance coverages made subject of this litigation on Plaintiffs' behalf, which policies set forth provisions not contained in Plaintiffs' prior policies; not contained in the coverage proposal; not contained in the binder; but which provisions are now being used by the [Insurance] Defendants in defense to Plaintiffs' claims herein.[18]

---

[14] R. Doc. 2.
[15] R. Doc. 6.
[16] R. Doc. 8.
[17] R. Doc. 53 at 8.
[18] *Id.* at 5.

AJG represents that, prior to filing responsive pleadings, it informed Plaintiffs that it intended to file a Rule 12(b)(6) motion for failure to state a claim and provided supporting case law.[19]  As a result, Plaintiffs filed a fourth amended complaint.[20]

In the fourth amended complaint, Plaintiffs alleged that AJG "breached its obligations and duties to Plaintiffs by errors and omissions by allowing, without notice to Plaintiffs, the inclusion of provisions and exclusions in the Insurance Defendants' policies[, which] provisions and exclusions are now being argued in defense to Plaintiff[s'] claims."[21]  This time, as factual support for the claim, Plaintiffs alleged:

12.

In March of 2023, [AJG] was Kostmayer and Monticello's agent for the procurement of the insurance coverages made subject of this litigation.  [AJG]'s services included communication with insurers and the submission of proposals on Plaintiffs' behalf.

13.

In March of 2023, [AJG] obtained the insurance coverages on Plaintiffs' behalf made subject of this litigation and presented the coverages to Plaintiffs.  The coverages presented by [AJG] to Plaintiffs *were understood by Plaintiffs* to be the same coverages as their previous policy.

14.

On April 1, 2023, Plaintiffs' insurance policy became effective with provisions and exclusions not contained in Plaintiffs' prior policies; not contained in the coverage proposal; and not contained in the binder given to Plaintiffs on March 27, 2023.  These provisions and exclusions are now being argued in defense to Plaintiff[s'] claims.

---

[19] R. Doc. 78-1 at 2.
[20] R. Doc. 71.
[21] *Id.* at 8.

15.

[AJG] never provided a copy of Plaintiffs' final policy until Plaintiffs requested the policy several days after the incident in September of 2023, over six[] months after the policy had been in effect.[22]

AJG moved to dismiss the fourth amended complaint, arguing that Plaintiffs could not identify any duty owed, but breached, by AJG that would give rise to a claim because Plaintiffs did not allege that they requested that AJG procure a specific amount or type of insurance and that AJG failed to obtain the requested insurance.[23]   This Court agreed, holding that, under Louisiana law, without an allegation that Plaintiffs made a specific request to AJG for insurance and that AJG failed to use reasonable diligence to procure said insurance, Plaintiffs did not state a breach-of-fiduciary-duty claim against AJG.[24]   The Court also held that Plaintiffs failed to state a claim against AJG for any alleged failure to deliver timely a copy of the insurance policy because AJG had no duty to do so.[25]   However, the Court granted Plaintiffs fifteen (15) days from the date of the order to file an amended complaint to cure the noted pleading deficiencies.[26]

In the fifth amended complaint, Plaintiffs allege that AJG breached its duties and obligations by "failing to procure renewal insurance coverages as requested by Plaintiffs on its fleet of vessels, including the OU701, on the same terms and conditions as Plaintiffs' expiring annual policies (which Plaintiffs had already provided to [AJG] in May-June 2022)."[27]   Plaintiffs also allege that AJG failed to notify them that AJG could not, or did not, procure the requested

---

[22] *Id.* at 5 (emphasis added).
[23] R. Doc. 78-1 at 4-5.
[24] R. Doc. 82 at 8-11.
[25] *Id.* at 11-12.
[26] *Id.* at 12.   The Order was signed on March 26, 2025, but it was not placed on the docket until March 27, 2025.   Plaintiffs sought, and were granted, leave to file their amended complaint on April 11, 2025, fifteen days after March 27. 2025.   Considering the delayed docketing and this Court's grant of Plaintiffs motion for leave to file their fifth amended complaint, the Court deems the filing timely, notwithstanding AJG's timeliness argument to the contrary. *See* R. Doc. 88-1 at 1-2, 4-6.   To the extent AJG believes it has been prejudiced by any delay in pleading, R. Docs. 88-1 n.26; 92 at 1-2, it may seek appropriate relief to cure the prejudice.
[27] R. Doc. 87 at 13.

5

insurance on the same terms and conditions as the expiring policies.[28]  Further, Plaintiffs allege

that AJG breached its duties to perform contracted-for risk management services, to provide a copy

of the policy to Plaintiffs, and to review the policies to identify and notify Plaintiffs of any

discrepancies between the terms and conditions of the new policies and the expiring ones and the

April 2023 binder.[29]  In this latest amended complaint, as factual support for their claims, Plaintiffs

allege:

12.

In 2022, Plaintiffs' fleet of vessels, equipment, marine yard, offices and entire
business enterprise were insured under a package of insurance policies expiring at
the end March 2023 that had been procured by another insurance broker not [AJG].

13.

In May-June 2022, and in anticipation of the March 2023 renewal date of Plaintiffs'
package of insurance policies, representatives of [AJG] began soliciting business
from Plaintiffs urging a change from Plaintiffs' existing insurance broker in
connection with the renewal of Plaintiffs' package of insurance policies scheduled
to expire the following March 2023.

14.

In connection with the solicitation of Plaintiffs' insurance needs, representatives of
[AJG] met with Plaintiffs and communicated with Plaintiffs by email to gain an
understanding of Plaintiffs' overall business enterprise and risk management needs
and insurance needs.

15.

As part of its investigation of Plaintiffs' risk management needs and insurance
requirements, Plaintiffs provided [AJG] with copies of all Plaintiffs' expiring
insurance policies together with the insurance proposal from Plaintiffs' prior
insurance broker.

16.

In addition to providing insurance brokerage, [AJG] also agreed to perform "true
risk management services" for Plaintiffs beyond "simply brokering insurance"

_____

[28] *Id.* at 14.
[29] *Id.*

which additional professional services included "removable exclusions" from insurance policies.

17.

Based on [AJG]'s offer and agreement to perform professional services beyond mere insurance brokerage (i.e. risk management, removable exclusions and policy review), Plaintiffs switched from its previous insurance broker to [AJG] effective January 2023.

18.

In addition to its obligations as broker and provider of risk management professional services, [AJG] was further obligated to transmit, within a reasonable time, insurance policies to Plaintiffs that it received or obtained approval from/by the Insurance Defendants and other carriers, which duty and obligation [AJG] breached causing loss and damages to Plaintiffs.

19.

As part of its agreed professional services beyond mere insurance brokerage, [AJG] also assumed the additional duty and contractual obligation, as confirmed in its own emails, to conduct a review of the renewing policies on behalf of Plaintiffs within ten (10) business days to identify any discrepancies, which assumed duty and obligation [AJG] breached causing loss and damages to Plaintiffs.

20.

Plaintiffs contracted [AJG] to place renewal insurance coverages on its fleet of vessels, including the OU701, on the same terms and conditions as Plaintiffs' expiring annual policies (which Plaintiffs had already provided to [AJG] in May-June 2022), which duty and obligation [AJG] breached causing loss and damages to Plaintiffs.

21.

[AJG] failed to place renewal insurance coverages on its fleet of vessels, including the OU701, on the same terms and conditions as Plaintiffs' expiring annual policies (which Plaintiffs had already provided to [AJG] in May-June 2022) and [AJG] failed [to] timely notify Plaintiffs of this failure.

22.

Further, because [AJG] did not timely provide Plaintiffs with notice or a copy of the renewal hull and protection & indemnity policy, Plaintiffs did not learn of

[AJG]'s breach of duty and obligation until after the September 23, 2023 casualty forming the basis of this litigation.

23.

On March 27, 2023, [AJG] provided Plaintiffs with a binder of insurance coverages from the Insurance Defendants with an effective insurance coverage date starting April 1, 2023 causing Plaintiffs to assume that [AJG] procured the insurance coverages on the same terms and conditions as Plaintiffs expired policies.

. . . .

26.

From April-July 2023, Plaintiffs received no insurance policies from either [AJG] or the Insurance Defendants.

27.

On July 3, 2023, Plaintiffs requested [AJG] for copies of its renewal insurance policies which included Plaintiffs' hull and protection & indemnity policy.

28.

On July 5, 2023, [AJG] provided all Plaintiffs' renewal insurance policies except Plaintiffs' hull and protection & indemnity policy covering its fleet of vessels including the OU701.

29.

Regarding Plaintiffs' hull and protection & indemnity policy, either [AJG], the Insurance Defendants or both, failed to comply with Plaintiffs' request for the policy for over two and half months until September 25, 2023 which was after the September 23, 2023 casualty forming the basis of this litigation.

30.

In further breach of its duties and obligations, [AJG] failed to perform any services for risk management or services for "removable exclusions" from Plaintiffs' renewed hull and protection & indemnity policy.

31.

In further breach of its duties and obligations, [AJG] also failed to conduct a review or notify Plaintiffs of the results of the review of Plaintiffs' renewal hull and

protection & indemnity policy within ten (10) business days to identify any discrepancies.

32.

The Insurance Defendants never transmitted the renewal hull and protection & indemnity policy to Plaintiffs.

33.

It is unknown, without discovery, the exact date when the Insurance Defendants approved or transmitted the renewal hull and protection & indemnity insurance policy to [AJG].

34.

It is unknown, without discovery, the exact date when or if [AJG] performed risk management services and policy review on behalf of Plaintiffs to identify discrepancies in Plaintiffs' renewal hull and protection & indemnity policy.

35.

Although discrepancies existed in the renewal hull and protection & indemnity policy issued by the Insurance Defendants, and in breach of its assumed duty and contractual obligation to do so, [AJG] at no time whatsoever notified Plaintiffs of those discrepancies, nor did [AJG] perform risk management on [P]laintiffs' behalf.

36.

In further breach of its duty and contractual obligations, [AJG] and/or the Insurance Defendants failed to timely provide a copy of the renewal hull and protection and indemnity policy to Plaintiffs until after the casualty forming the basis of this litigation making it impossible until after the September 23, 2023 casualty described below for Plaintiffs to know about the policy discrepancies, exclusions and conditions being raised [by] the Insurance Defendants or to engage in risk management.

. . . .

43.

On September 25, 2023, [AJG] provided a copy of Plaintiffs' hull and protection and indemnity policy.

9

44.

The hull and protection & indemnity policy issued by the Insurance Defendants and provided to Plaintiffs by [AJG] on September 25, 2023 contains added terms and conditions not included in Plaintiffs' prior expired policy, not included in the April 1, 2023 binder and not included in the renewal policy's table of contents.[30]

## II.    PENDING MOTION

AJG moves to dismiss Plaintiffs' fifth amended complaint pursuant to Rule 12(b)(6), arguing that Plaintiffs again fail to state a claim upon which relief can be granted because they still have not alleged that they requested that AJG procure a specific amount and type of insurance and that AJG failed to obtain such coverage.[31]   AJG contends that Plaintiffs' allegations that they "contracted" AJG to procure insurance and "understood" that AJG would obtain the same coverage as was included in the expiring policies are insufficient to allege that Plaintiffs made a request to AJG for a specific type and amount of coverage.[32]   AJG also asserts that Plaintiffs have not stated a claim for failure to deliver the policy because they repeat the same allegations as were included in the fourth amended complaint, which this Court dismissed.[33]   Moreover, AJG argues that Louisiana law does not recognize any heightened duties on insurance agents such as reviewing a policy for discrepancies or providing risk management services.[34]   Finally, AJG posits that Plaintiffs' theory of liability – whether it be tort or contract – is unclear, but, to the extent that Plaintiffs attempt to assert breach-of-contract claims, they have not stated any, particularly pertaining to review of the policy or providing risk management services.[35]

---

[30] *Id.* at 5-12.
[31] R. Doc. 88-1 at 2, 8-9.
[32] *Id.*
[33] *Id.* at 2, 9-10.
[34] *Id.* at 10-11.
[35] *Id.* at 7-8, 11-13.

In opposition, Plaintiffs argue that they have stated viable claims against AJG, including, particularly, "(1) breach of AJG's duties of procurement as Plaintiffs' insurance broker; (2) breach of AJG's additional assumed duties and obligations to provide risk management services, removal of policy exclusions and insurance policy review; and (3) breach of AJG's duties as agent and fiduciary to timely provide a copy of the relevant hull and protection & indemnity policy to Plaintiffs."[36]  Plaintiffs then recite the allegations against AJG contained in the fifth amended complaint, asserting that such allegations are sufficient to allege the purported claims.[37]  With respect to procurement of the policy, Plaintiffs contend that they allege they requested AJG to procure a renewal policy with the same terms and conditions as their expiring polices, and that AJG failed to do so, which, according to Plaintiffs, is tantamount to requesting a specific type and amount of insurance.[38]  Plaintiffs further argue that, under Louisiana law, an insurance agent can assume additional duties, and, say Plaintiffs, they allege that AJG did so by agreeing to perform true risk management services, to remove exclusions from the policies, and to review the policies for discrepancies.[39]  Finally, Plaintiffs contend that, based on fiduciary and agency law, AJG was obligated to provide timely to Plaintiffs a copy of the insurance policy.[40]

AJG replies, reurging its argument that Plaintiffs do not allege they requested a specific type of insurance nor that AJG did not use reasonable diligence to obtain said insurance.[41]  AJG further contends that Louisiana law, post-*Coleman E. Adler & Sons* and *Isidore Newman*, does not recognize any heightened duties on insurance brokers.[42]  Finally, as to nondelivery of the policy,

---

[36] R. Doc. 90 at 3.
[37] *Id.* at 3-7.
[38] *Id.* at 8-12.
[39] *Id.* at 12-14.
[40] *Id.* at 14-16.
[41] R. Doc. 92 at 2-3.
[42] *Id.* at 3-7.

AJG points out that Plaintiffs attempt to support this claim by recycling the same allegations and arguments that this Court previously rejected.[43]

## III.    LAW & ANALYSIS

### A.  Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted

---

[43] *Id.* at 7-9.

12

unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th

Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Analysis

#### 1. Procurement of the Policy

In *Isidore Newman School v. J. Everett Eaves, Inc.*, the Louisiana supreme court recognized that, "[i]n Louisiana, an insurance agent 'owes a duty of "reasonable diligence" to his customer,' which is 'fulfilled when the agent procures the insurance requested.'" *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894, 899 (5th Cir. 2022) (quoting *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 42 So. 3d 352, 356 (La. 2010)). "To recover under Louisiana law for an agent's failure to obtain insurance coverage, a plaintiff must show '(1) an undertaking or agreement by the insurance agency to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was properly insured.'" *Id.* (quoting *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990)). Thus, an insurance agent fulfills his duty of reasonable diligence to his customer when he procures the insurance requested. *Id.* (citing *Isidore Newman*, 42 So. 3d at 356). However, the agent's duty "'has not been expanded to include the obligation to advise whether the client has procured the correct amount or type of insurance coverage.'" *Id.* (citing *Isidore Newman*, 42 So. 3d at 359). "To the contrary, 'it is the

*insured's* responsibility to request the type of insurance coverage … needed,' and 'it is not the agent's obligation to spontaneously or affirmatively identify the scope or amount of insurance coverage the client needs.'" *Id.* (quoting *Isidore Newman*, 42 So. 3d at 359) (emphasis in original; alteration omitted).

The Fifth Circuit's pre-*Isidore Newman* decision in *Offshore Production Contractors, Inc. v. Republic Underwriters Insurance Co.* initiated a narrow line of cases holding that an insurance agent's fiduciary duty to the insured may be heightened under circumstances giving rise to a special relationship between the agent and the insured. 910 F.2d at 230. The case involved an insurance agent with 30 years' experience who specialized in insurance for oil-service companies. The insured, a maritime construction company hired by an oil company to construct a pipeline in the Gulf of Mexico, had expressed concern to the agent about losses it could incur from downtime caused by bad weather. An insurance policy was specially drawn for the insured but the drafters rejected language that would have extended coverage to include downtime caused by bad weather. The agent told the insured that the policy covered losses due to downtime for any reason. The construction project was beset by weather delays, the insured made a claim for its losses, and the insurer denied the claim because weather delays were not covered under the policy. The insured sued the agent for breach of fiduciary duty. In upholding judgment against the agent, the Fifth Circuit observed that under the scenario presented – that is, "[w]here an agent is familiar with the insured's business, has reason to know the risks against which an insured wants protection, and has experience with the types of coverage available in a particular market" – an insurance agent acts as more than a "mere order taker" for the insured, and the agent's expanded "fiduciary duties include advising the client with regard to recommended coverage, investigating and ascertaining the financial condition of prospective companies, and notifying the insured of policy cancellations

15

or terminations." *Id.* Now, though, in the wake of *Isidore Newman*, which represents the pronouncement of the state's highest court on a matter of state law, courts have rightly counseled that "the holding of *Offshore Production* should be closely cabined by the facts of the case." *Lightfoot v. Hartford Fire Ins. Co.*, 2010 WL 11545223, at *4 n.4 (E.D. La. Aug. 27, 2010).

Indeed, in *Coleman E. Adler & Sons*, the Fifth Circuit explained that *Offshore Production* "does not stand for the broad and murky proposition that a client's 'close relationship' with an insurance agent or broker creates a 'heightened duty' to anticipate the client's insurance needs or to recommend specific coverage." 49 F.4th at 900. Instead, the facts of *Offshore Production* "are far narrower" in that the insured there "told its insurance agent about its specific coverage needs, but the agent procured a policy that excluded the exact coverage [the insured] wanted. In other words, the agent breached its fiduciary duty by negligently failing to obtain the coverage requested by its client." *Id.*

In their fifth amended complaint, Plaintiffs have, by the thinnest of margins, pleaded enough facts to overcome AJG's motion to dismiss their claim based on procurement of insurance. To start, AJG represents that Plaintiffs again allege, as they did in their fourth amended complaint, that they "understood," but did not request, that the renewal policies would be the same as the expiring ones. AJG rightly insists that any such allegation, alone, would be insufficient to state a claim. But Plaintiffs do not repeat this failed allegation in their latest iteration of the complaint. Instead, Plaintiffs add in their fifth amended complaint factual allegations that they provided the expiring policies to AJG and that they "contracted" AJG to place renewal insurance coverages on the same terms and conditions as contained in the expiring policies. It is true that the word "contracted" is not the same as the word "requested," but the term can be read as being in the nature of a request. Moreover, in Plaintiffs' formulation of count III (*i.e.*, Plaintiffs' claims against

16

AJG), Plaintiffs do finally allege that AJG failed to procure renewal insurance coverages "as requested by Plainitffs … on the same terms and conditions as [the] expiring … policies." This supposed request is akin to the one at issue in *Offshore Production*, where the prospective insured requested insurance that covered (*i.e.*, did not exclude) a specific event (*viz.*, weather delays). Of course, this assumes, as a prerequisite to liability, that the terms and conditions of the expiring policies would have provided coverage for the loss, but this issue is not before the Court at this time. In short, at this motion-to-dismiss stage, where a "complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff," *Woodward v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005), *quoted in Villarreal v. City of Laredo*, 44 F.4th 363, 376 (5th Cir. 2022), Plaintiffs have stated a claim against AJG for failing to procure requested insurance – albeit just barely.[44]

### 2. Assumption of additional duties

As stated above, an insurance agent's duty to its client is generally limited to using reasonable diligence to procure the insurance specifically requested. *Coleman E. Adler & Sons*, 49 F.4th at 899. However, Louisiana courts have recognized that an insurance agent can assume

---

[44] In affording Plaintiffs "one last effort" to state such a claim, the Court cautioned that, in doing so, "they must comply with their obligations under Rule 11." R. Doc. 82 at 12. The Court has generously read the relevant allegations of the fifth amended complaint in Plaintiffs' favor notwithstanding the ambiguity in which they have been drawn. Thus, while paragraph 20 could be read to allege only that AJG was expressly "contracted to place renewal insurance coverages" generally, with Plaintiffs unilaterally understanding that such placement would be "on the same terms and conditions" as contained in the expiring polices, the Court reads the paragraph, for purposes of this motion to dismiss, as alleging that Plaintiffs specifically contracted AJG to renew the policies on the same terms and conditions as contained in the expiring policies – essentially a request for a specific amount and type of coverage. Count III is even more ambiguous: do Plaintiffs claim that AJG breached its duties by failing to procure coverage Plaintiffs specifically requested – that is, coverage on the same terms and conditions as the expiring policies – or do Plaintiffs claim that they requested renewal coverages that AJG was not able to procure on the same terms and conditions as contained in the expiring policies? In other words, did Plaintiffs specifically contract or request AJG to procure renewal insurance having the same terms and conditions as the expiring policies, which AJG failed to do, or did Plaintiffs contract or request AJG to procure renewal insurance more generally, which AJG was unable to place with the same terms and conditions as the expiring policies? These questions are rendered more acute by Plaintiffs' curious and mistaken pronouncement that "[t]his case is not about the types of insurance requested by Plaintiffs." R. Doc. 90 at 10. The Court is banking that this is not an instance of artful pleading (or "linguistic maneuvering," as AJG puts it, R. Doc. 92 at 2), but time and discovery – and perhaps later testing on summary judgment – will tell the tale. In the meantime, the Court's caution regarding Rule 11 remains in place.

a greater duty by agreement with its client. *See, e.g., Bulldog, Inc. v. Starstone Specialty Ins. Co.*, 2024 WL 1132228, at *7 (E.D. La. Mar. 15, 2024) (quoting *Belmont Commons, LLC v. Axis Surplus Ins. Co.*, 569 F. Supp. 2d 637, 644 (E.D. La. July 28, 2008)). There is nothing in *Coleman E. Adler & Sons* or *Isidore Newman* that precludes an insurance agent from assuming by agreement duties beyond those imposed by law. Here, Plaintiffs allege that the cited additional services were agreed to between themselves and AJG in meetings and emails and thus became contractual duties. This is enough to allege a claim at this motion-to-dismiss stage. However, whether AJG actually assumed any additional duties by agreement will be probed in discovery and this claim, too, likely tested by summary judgment.

### 3. Delivery of the policies

Plaintiffs have not stated a claim against AJG for any alleged failure to deliver timely a copy of the insurance policy. Plaintiffs make the same arguments regarding delivery of the policy that this Court already rejected in ruling on AJG's motion to dismiss the fourth amended complaint.[45] As this Court previously held in this case, AJG had no duty to timely deliver to Plaintiffs a copy of the insurance policy:

> Louisiana Revised Statute 22:873 provides that an insurer must deliver the policy to the insured within a reasonable time of its issuance. Not so in this case. First, this statute applies to *insurers*, not agents or brokers like AJG. Second, even if § 873 applied to agents and brokers, Louisiana Revised Statute 22:851(A) states that the provisions of chapter 4 of the Louisiana Insurance Code, where § 873 is found, do not apply to ocean marine insurance. The parties do not dispute that the policy at issue here is one for marine insurance. Plaintiffs attempt to avoid this problem, though, by arguing that insurance agents and brokers have a duty under general agency principles to provide a copy of the policy to the insured because a "mandatary is bound to deliver to the principal everything he received by virtue of the mandate," relying upon Louisiana Civil Code article 3004. But Plaintiffs do not cite any caselaw applying article 3004 in this way to an insurance agent or broker, and the Court has not unearthed any. Moreover, Plaintiffs' argument flies

---

[45] *Compare* R. Doc. 80 at 11-13, *with* R. Doc. 90 at 14-16. Plaintiffs also argue that AJG's alleged nondisclosure amounts to a claim for negligent misrepresentation. R. Doc. 90 at 16. But Plaintiffs do not allege such a claim in the fifth amended complaint. *See* R. Doc. 87.

in the face of the "well-settled rule of statutory construction that the more specific statute … controls over the more general provision." *Self v. BPX Operating Co.*, 388 So. 3d 366, 369 (La. 2024).[46]

Thus, Plaintiffs have not, and cannot, state a claim for failure to deliver timely the policy, and that claim is dismissed with prejudice.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that AJG's Rule 12(b)(6) motion to dismiss (R. Doc. 88) is GRANTED as to Plaintiffs' failure-to-deliver claim, which is DISMISSED WITH PREJUDICE.  The motion is otherwise DENIED.

New Orleans, Louisiana, this 15th day of May, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[46] R. Doc. 82 at 11-12 (footnote omitted).